May it please the court, I'm Paul Turner, representing Steve Michael Cox, the appellant in this case. I'd like to reserve two minutes for rebuttal, please. A couple of quick housekeeping items. I have submitted a couple of cases under Rule 28J by this morning, like now, and I apologize for the lateness of that. There's a third case that I wanted to make sure the court knew right up front. When I was preparing for oral argument, I noticed that one of the cases I had cited in our original opening brief, Viscotti, V-I-S-C-O-T-T-I-V, Woodford, had been reversed by the U.S. Supreme Court. I did not know that until a few days ago, but wanted to be sure the court was aware of that. With that, Your Honor, I'd like to address the order of the court from approximately a week ago, which asked counsel to discuss the Wiggins case that came down from the U.S. Supreme Court. Yes. Remember, I would just say one thing at the outset of this argument, and if either of my colleagues don't agree with the way I present this, they will, I'm sure, correct me. As I understand, we have two issues that have been certified and fully briefed. We have several other issues in which you have asked to expand the certification by briefing them. The government, if I recall, hasn't responded to those, which they don't have an obligation to do until there's a certification, unless and until there's a certification. We wouldn't decide those issues on the merits unless we decided to certify and gave the government a chance to respond. That doesn't mean you can't discuss them to some extent here if the court's interested or if you wish to, but we wouldn't resolve those issues on the merits without first certifying and giving the government a chance to brief it. Is that correct? I agree. I understand, Your Honor. I would like to address them, but I certainly don't want to divert the court from what you would like to hear this morning. I would like to address them up front, frankly, because I think they're crucial issues to my client. And if the court's permission, I'll do that. Are you going to address the other two? I am, Your Honor. You have 20 minutes, which is a lot of time. Maybe what would be best would be for me to address the other two first and then at the end address the other issues. Grounds three and four are claims basically that the investigation in this case was not adequately done. That's ground three. And ground four, that the victim's criminal history was not allowed to be presented to the jury in a case where self-defense was at least an underlying theory of the defense. Those two matters have been dismissed on procedural default grounds by the district court. We've made various arguments in opposition to that. I think this all comes down really to one issue. Our basic claim is that the Nevada law was not violated, the procedural rule under Nevada 34.810, which is a rule which requires you, in order to present a post-conviction claim, requires that it have been presented properly to the Nevada Supreme Court if you had a fair opportunity to do so before. And their argument has been that it was never presented to the Nevada Supreme Court. Well, whether it was presented or not, didn't the Nevada Supreme Court deal with it? It did deal with it. Deal with them? Yeah, it dealt with both of them. Both of them in addressing the second direct appeal in this case. And, frankly, the bottom line, we believe, is that they said they considered them. And once you say you consider the issues, our position is that that procedural issue has been resolved, frankly, and that the district court should have addressed both of those issues on their merits. Were they raised in the pro se part of the brief or in the main part? In the pro se part, Your Honor, filed some period of time after the original opening brief was filed. But that motion was pending for a considerable period of time. If you're correct on that, that the two matters were considered and addressed and resolved by the court, that would be the end of the appeal on those issues because the district court didn't reach the merits, so we'd have to revamp the circuit. That's correct, Your Honor. Is there anything more you have to say on those two? Just so the court doesn't waste time with my argument that I don't believe it should, we had also addressed cause and prejudice and some other aspects. Quite frankly, I this morning wanted to tell the court that I don't believe our cause and prejudice argument is meritorious, and I don't think the court should waste time considering it. We did not have under Edwards v. Carpenter, unfortunately, we did not have and do not have an unexhausted ineffective assistance of counsel claim, which would have been good cause. Unfortunately, we don't have that, and I don't want the court to address that, and I probably should have withdrawn that earlier, but I've come to a realization preparing for our argument that that claim doesn't have merit. Thank you. I wish we do appreciate you telling us now, too. We wouldn't reach that anyway if you prevail on your first point that the court addressed those issues. That's correct, Your Honor. And listen, the court has questions on that. That's my basic position on three and four. I would like to address the other issues, though, if I could, at least in a procedural context. The other issues were really, I suppose, addressed irrelevant only to whether we should grant the COA. That's correct, Your Honor. Could I address those sort of in a procedural way? I guess I get in the merits. Well, you've got some time. Yeah. And believe me, if there's something else about three and four that the court needs from me, I want to give it to you. No, no, that's fine. I'm not trying to, you know. No, no, that's fine. You've given your argument succinctly, which is a refreshing change. With respect to ground one and 5E, in light of the Wiggins case, it kind of highlights the fact that, quite blunt about it, in 5E, we're claiming that Mr. Cox's attorney did not adequately investigate his case and present anything remotely similar to a legitimate mitigation case at his second sentencing. And in light of Wiggins, it would seem to us, at least, that that issue is at a minimum debatable among reasonable jurists at this point in time. There are plenty of other cases before Wiggins that I think make that true, but Wiggins seems to pull them all together, in my judgment. Almost all of these are death penalty cases, aren't they? And this was not a death penalty case. It was a first-degree murder, but it wasn't a death penalty. That's true, Your Honor. However, under Nevada law, it all comes under the same sentencing statute. The first-degree murder comes under the same statute, which offers you a penalty hearing opportunity, whether it's death or first-degree murder non-death. It's the same basic statutory structure. You get a full penalty hearing. Is the death hearing before a jury, and the one non-death like this is before a judge, or was there some kind of a waiver here? You can waive the jury. It can be before a jury, but you can waive the jury. There was a waiver in this case. Our client waived. He wanted the judge to decide it, and he asked for that. In fact, that's why the case was reversed the first time around in state court. The judge refused to sentence him, actually, originally. He came back. I'd also say, Your Honor, that the bedrock of all of this is Strickland, and Wiggins makes it crystal clear that Strickland is the Supreme Court case that all of this funnels back onto. I read Wiggins with interest last week, and I couldn't find anything in it that limited its principles to death penalty cases. Could you? I could not, Your Honor. It references an ABA handbook or whatever it is that may speak to death penalty cases, but I don't see a reason it wouldn't speak to non-death penalty cases. The case overall, as far as I can tell, is not limited to death penalty cases. Strickland sure isn't. Strickland, as we all know, has been applied endlessly in non-death penalty cases, and I don't know of any propensity of the Supreme Court or any other court to limit what we're talking about to death penalty cases. Now, admittedly, death penalty cases may be at the top of the tier of importance, but we're talking about life without versus life with, which I would submit to the court is right under death. Life without means you've eliminated hope. You no longer have hope. And it's not death, but it's close, and it's real important. In other cases, you might be arguing death is different. Death is different. I think taking away hope is different. A chance for parole means something to a prisoner, and when you take that away, you've taken something away. There have certainly been instances in my home state in Arizona where people have voluntarily pushed themselves down the death penalty track because they thought life in prison without parole was a more severe consequence than being executed. That's right, Your Honor, and I think that's true. I think that's very, very true. The other issue, of course, that we've asked for certain – so I believe Wiggins – we have better facts than Wiggins, as Your Honors know. The lawyer in Wiggins had at least the argument that he had another option. He could argue that his client wasn't the trigger man. We don't have any other argument here. This lawyer shows up at sentencing and has one argument, mitigation, and he doesn't make that argument in any effective way. And I won't – I was prepared this morning to get into some detail on that. I don't think that's appropriate in light of the Court's – Yeah, we're not going to decide the merits of the claim. We're just going to decide whether there's enough for a certificate of appealability. No, I agree, Your Honor, and I don't want to take up your time on that. I think you probably can feel my feelings about what happened at this sentencing. And the quote we had in there, I think, says it all. When the first thing out of the judge's mouth is, Gene, the lawyer, let's do yours. You've got other places to be, right? Yes, Judge, I appreciate that. Your client's being sentenced for first-degree murder. You don't have any other place to be. That's the only place you have to be. With respect to ground one, the Miranda argument, I would simply say that I think that there is a real debate over whether or not the court, which did realize that this defendant was seriously mentally ill. I don't see any doubt about that in anything in this record. The judge realized that and ordered additional competency examinations. And our position, of course, is that he should have ordered it to be examined with respect to those admissions, which were terribly damaging to this man. And we would submit, Your Honor, if you would give the State an opportunity to respond to our motion, that ultimately it will be sustained and we will have an opportunity to come back and argue those points. Thank you. Good morning. If it pleases the Court, my name's Vic Schulze. I'm here for Warden McDaniel and Brian Sandoval, the Attorney General of the State of Nevada. And from the outset, I would like to thank the Court for scheduling this today because it's been 115 degrees in Las Vegas last week, and we love coming up to San Francisco. Stay for the weekend. I'm sorry? Stay for the weekend. I should. I should. We've been baking. Regarding the procedural default of Claims 3 and 4, I would point out that this Court recently found just a few weeks ago in Kulovang 329, Fed 3rd, 1069, that the Nevada Supreme Court consistently applies the procedural default rule of 34.810 in non-capital cases. We had a different ruling in capital cases in this Court's Valerio decision based on the fact that the Nevada Supreme Court draws a distinction based on the infamous or the well-known ruling from the U.S. Supreme Court that death is different, and apparently the Nevada Supreme Court agrees with that. But under Vang, the default rule that was applied to these two claims is adequate and consistently applied in non-capital cases. How can you say a claim is procedurally defaulted for not being presented when the Nevada Supreme Court considered it and determined it? I can say that, Your Honor, because the procedural posture of the alleged presentation or the purported presentation of the claim was. Let's assume we've got a claim, just hypothetically, that it's absolutely clear it was not presented, but the state court of last resort considers the claim on the merits and denies it. How can you say that's not exhausted or that it's been defaulted? If those were the facts, as you're putting forth, then I would say that claim was exhausted, but those are not the facts that happened here. Something different happened here. The petitioner was represented on direct appeal, as you're going to be, and he filed a request to submit a proper person brief. It was in that proper person brief where this issue was raised. Under Nevada Rule of Appellate Procedure 46B, the Supreme Court declined to hear that, declined to accept the filing of that brief because Mr. Cox was represented by counsel on direct appeal. So that issue was not heard at that point in time because that would have violated a procedural rule. When he then turned around and filed this document entitled Motion for Acquittal and Advisory Opinion that the state courts construed as a habeas petition because that was filed in proper person and they were construing those liberally, he raised that claim, and at that point in time the courts denied that claim because they said you waived that claim on direct appeal. At EOR, if I can cite very specifically, the Nevada Supreme Court at EOR 832, beginning at 831, there's an order dismissing appeal dated April 10, 1998 from the proper person appeal from the habeas, from that habeas petition that was entitled Motion for Acquittal and Advisory Opinion. On page 2 at the bottom, what the Supreme Court said was that specifically, appellant waived these claims by failing to raise them on direct appeal, specifically cited NRS 34810 sub 1. So at that point in time, that is the procedural default. Now, the court did go on and say, moreover, we have reviewed the claims and we find that they have no merit. But prior to doing that, they invoked the procedural default rule, and that's all you need to do under Coleman v. Thompson to default those claims. And therefore, when U.S. District Court Judge Hagan found that these claims were defaulted, he was correctly applying Coleman v. Taylor because there was a specific finding to a state procedural rule by the Nevada Supreme Court. What's the date of that order you were reading from? April 10th of 1998. It was filed in the state Supreme Court. What about the order of April 24th of 1997? There were three different appeals. That would be – I have that also. That's the order dismissing appeal from the – I think that's the second ODA. There was a direct appeal. There was an order of remand that was issued from the Nevada Supreme Court for resentencing. That was filed in 1994. That's at EOR 505. We went back to the Nevada – they went back to the Nevada Supreme Court because he wanted to be sentenced by a judge. He did not want to be sentenced by a jury, is my understanding of the record. And then at EOR 824, the Nevada Supreme Court issued the – its order dismissing appeal from the second direct appeal that only dealt with that issue of the resentencing by Judge Sobel in the 8th Judicial District in Las Vegas. And then in this habeas appeal, this is when they decided that the – and I gave you that. I think that begins at EOR 831. The Nevada Supreme Court specifically cited that procedural rule under Coleman v. Thompson that's sufficient to establish the procedural default. Under Vang, in the same timeframe, this court has already decided that the Nevada Supreme Court in non-capital cases consistently applies that same rule. If I might, if you don't have questions on that, if I could move on to Wiggins just very briefly because you expressed an interest in that. It would be my position that Wiggins has no application in this case, and it has no application because Wiggins was a capital case. And I'm fascinated, sitting at counsel table, the first time somebody in the Federal Public Defender's Office in Las Vegas is not shouting from the rafters that death is different. It's the first time I've ever heard a defense attorney say that death is not different and life without is almost death because had this been a capital case, as Your Honor pointed out, the argument would have been completely different from the FPD. Can you point out in Wiggins where Justice O'Connor said that principles she articulates are limited to death penalty cases? I cannot do that because I don't find that language in there. I would point the court out to the U.S. Supreme Court decision in Harmon v. Michigan, however, where the U.S. Supreme Court specifically said that there is no right to an individualized sentencing determination in non-capital cases, and that was followed in this court by United States v. Le Fleur, 971 Fed Second 200. The standard rule is that mitigating evidence balanced against aggravating evidence only applies in capital cases, and the distinction between death and non-death cases has been the bulwark of everything the U.S. Supreme Court has ever said, from Gregg to Woodson to Jurek v. Texas and every other foundational death penalty case. This was a non-capital case, and based on Harmon and Le Fleur, I would suggest to you that Wiggins does not have any application because the concepts of mitigating evidence and aggravating evidence at their heart, those concepts go to capital cases. This was a non-capital case. Well, this was a little bit slightly different from mitigating and aggravating because it has to do with the type of sentence to be given here, right? There was a choice. The choice was between life with the possibility of parole and life without the possibility of parole. I am presuming that your special order that you entered on addressing Wiggins goes to claim 5E, which was the ineffectiveness claim on counsel's alleged failure to present mitigators at the sentencing hearing. I would point out that, and I don't know how much detail you want me to go into, but I would point out that factually the claim doesn't have any merit anyway, and the COA should not be granted. And if it's granted, the claim should be denied if you choose to hear it on the merits, because 95 percent, and maybe I'm being too conservative, 98 percent of everything alleged in that claim that should have been presented was presented to the judge because the judge had the pre-sentence investigation report, and the pre-sentence investigation report. Did it talk about rehabilitation of a drug addict and all that stuff? Or a mentally ill person, I think. The pre-sentence investigation report is at EOR666 at SEC, and that went into Mr. Cox's background, his social history, his family history, his drug problems. The judge knew very well about all of his mental problems because he'd been looked at by six different psychiatrists. His lack of criminal history was in there, too. This was his first major crime. The judge knew his background. I would also point out that counsel read a report into the record from the division of the Nevada Department of Prisons attesting to Mr. Cox's positive institutional adjustment when he was in prison between the two direct appeals for about, prior to the second appeal, for 400 and some days. Ninety-five percent of everything this claim alleges should have been placed before the court was, in fact, placed before the court, and counsel knew that because counsel was an experienced lawyer in the 8th J.D., and he knew what was in the PSI because it was made part of the record. He knew how these proceedings worked. A letter from Mr. Cox's wife was also presented going to the issue in the claim of family support. Keep in mind, this is a case where Mr. Cox had departed from the family, found his way to Las Vegas, got involved with a prostitute, and ended up murdering her. And for the defense attorney to be able to convince the wife of the perpetrator in that situation to submit a supportive letter, I think is quite an astounding accomplishment, and I think it goes to his role as a thorough lawyer. But I would point out again that everything counsel currently wanted to be presented was presented in that PSI and in that sentencing hearing, and counsel knew that that was the process that was in use in the 8th J.D. There's no prejudice that even if he was supposed to have this, there's no prejudice to the defense attorney. Yes, Your Honor, that's exactly what I'm arguing. But I would also suggest to you that there was no deficient performance, which is the first Strickland prong, because counsel knew exactly what was in the PSI. He prepared for that sentencing hearing and made arguments and had gone out and done some additional investigation beyond what was in that PSI and did a decent job in that sentencing hearing. Very briefly on Claim 1, which is the allegation that Judge Sobel somehow had a duty to sui sponte, evaluate the voluntariness of the Miranda pleadings, I'd point out that that specific kind of claim was explicitly rejected by the U.S. Supreme Court in Wainwright v. Seitz. Judges do not have to be clairvoyant. Judge has to make his time available if the motion is raised, but there was no motion. I'd also point out one fundamental problem with that claim that the Nevada Supreme Court found with that claim in the first direct appeal, and that is nowhere in the claim, and this goes to prejudice, and the Nevada Supreme Court specifically said that, nowhere in the claim does Mr. Cox in the claim in the petition, either before the state court or the federal court, nowhere did Mr. Cox ever allege there was anything wrong with the waiver. He never alleged it was involuntary. He never alleged he was not competent. The entire claim is simply the judge had a sui sponte duty to clairvoyantly find out if the Miranda waiver was voluntary, and, of course, the Supreme Court in Wainwright v. Seitz said you don't have that duty. You have the duty to make the court available should somebody move to challenge the waiver, but that didn't happen here, and so, again, there's a lack of prejudice in the claim, and I would suggest the claim fails to state a claim that's cognizable on habeas corpus because even as the Supreme Court said, Nevada Supreme Court said, even if the court had a duty to sui sponte raise that issue, which they do not have, there's no allegation that the waiver of Miranda rights was either involuntary or that the client could not or that Mr. Cox somehow was incompetent at that time, so whether or not the judge did the evaluation is irrelevant even had there been that duty because he wasn't incompetent. Because they didn't raise it, we cannot assume that he was either incompetent or that he or that the waiver was involuntary. That allegation was never made. That fails to state a claim. So we think that what Judge Hagen did was correct as far as the procedural default. There was an explicit default cited by the Nevada Supreme Court regarding claims three and four. One fails to state a claim because there's no allegation that there was ever a problem with that waiver, and 5E fails to state a claim at least as far as the prejudice prong goes because everything is kind of like that you may have seen on television, that Prego spaghetti sauce commercial where somebody's chopping up all the spices and the announcer says, it's already in there, and somebody wants tomatoes in the spaghetti sauce, and the announcer says, it's in there. Well, this is the Prego spaghetti sauce argument. I would suggest to you that federal public defenders arguing all of this information should have been placed before the judge, and I'm arguing it's in there. It's already in the record before the judge, and the judge looked at that, and because of that, that claim has no merit. Thank you. Thank you. With respect to the default of grounds three and four, I think the Court's already familiar with all the orders that are applicable here. As the Court noted, the order that I believe is controlling here, obviously, is the April 24, 1997 order on the second direct appeal. The fact that the Court may have issued some later order after the fact that may be either confusing or ambiguous or whatever is, I would say, irrelevant because in this order, the April 24, 1997 order, which is Exhibit 54, in footnote one, page two of that order, as the Court knows. Is there anything in that order that says that it's procedurally defaulted, but we also add this footnote? Yeah. What it says specifically, Your Honor, is although appellant has not been granted permission to file documents in this matter in proper person. No, I don't mean from the footnote. It says we have received and considered it. No, no, I know. I have the footnote. In the text of the order before the footnote, in the text above, is there anything that says that these claims are procedurally defaulted? No, Your Honor. Okay. Not that I'm aware of. No. It's a very short order. Nothing says that. All right. Well, I just can't find the order at the moment. But I do have the footnote, too. The footnote. And, no, there's nothing in there that says that. With respect to ---- And where is that order in the excerpts? It's in Exhibit 54. It's a two-page order, and the footnote is the only footnote. It's one on page two. With respect to whether ---- Exhibit of record 823, is that it? I'm sorry. 828. 827-28. Yes. 828 is where the footnote is. With respect to Wiggins, I'm not going to belabor this any further at this point, but I will say I would like to reiterate that Nevada law, Nevada statute 175.552, speaks to all first-degree murder cases. In fact, it says whether or not the death penalty is sought. So, clearly, this is a statute speaking to both death and non-death. And in subsection 3 of the statute, it says in the hearing, that is the penalty hearing, evidence may be presented concerning aggravating and mitigating circumstances. So, clearly, this defense lawyer had a full opportunity, if he had used it, to present a full mitigating case just as if it was a death case. Would you extend Wiggins down to car theft and all that sort of thing? Your Honor, I think that wouldn't, I don't know that I would think about that. I think Wiggins would deal with cases, I would assume it deals with cases where. . . We know what it involved, but it doesn't really say what. . . No, it doesn't, Your Honor. I would hope that it wouldn't go to that point, but I think it goes to my point. I think it speaks to the fairness of a meaningful sentencing hearing for a murder, first-degree murder, I believe. It speaks to that subject, and that's what we've got. But one thing I would say that. . . It might place a pretty heavy burden on your office if you took it down to all the gun cases. It certainly would, but I'm sure if we could somehow handle it, we'd like to take it on. I can't speak to the other lawyers, though. Hopefully I wouldn't be the one maybe doing it. One thing that's critically important here I want to get across, I hope, to the Court, that what was in the record was a lot of very interesting information about Mr. Cox's mental illness and about his cocaine use. What was not in the record, critically not in the record, was the interconnection, one thing, of his cocaine use and his mental illness. And most critically, there was nothing in the record about the ability to rehabilitate a person who has a delusional, paranoid mental illness and is also suffering from cocaine addiction. That is only in the record that we helped create by employing Dr. St. Martin, whose report is at exhibit, excuse me, at EOR page 1763. Dr. St. Martin looked at all of these pieces. Dr. St. Martin did not redo what other people had done, necessarily, but he looked at all of these pieces, and he makes sense out of these pieces. And most importantly in his report, he notes that medication treatment decreases the intensity of the individual's delusions and renders them less likely to act on their misconception of reality. He notes that many individuals on medications will realize that their thinking was psychotic and give up the delusions completely. Treatment with antipsychotic medications would decrease the likelihood of Mr. Cox acting on his delusions and behaving violently. The district judge here, the state district judge, did not have that information. He concludes Mr. Cox is so dangerous that he won't allow him to have life with the possibility of parole. I would submit that if he had had, we would submit that if he had had this additional information, which was not in the record from any source, that he would have made a different conclusion. Finally, Your Honor, on claim one, I think it's a very ñ the Nevada Supreme Court handled this in a very strange sort of way. They first said that hypothetically they would assume you did have a duty, that the judge did have a duty to hold a hearing in this type of case. A sua sponte had a duty, sua sponte, to hold a hearing and address the subject, but that they wouldn't ñ that the court would not go any further because the appellant had not indicated that he felt that his Miranda rights were violated. I must say that the brief was not the best example, probably, of a briefing form, but it would seem highly unlikely that the attorney would raise this procedural issue for no reason at all if he didn't have ñ if he didn't think that the Miranda waiver was improper. Why would you ask a court to hold a hearing if you had no idea ñ if you had no concept that the underlying waiver was improper? That would be unethical, I would think, and absolutely inappropriate for a lawyer to argue for a hearing that had no meaning at all. And I think a fair reading of what he filed was he's saying to the court, the judge should have held the hearing, and by the way, my client's waiver was not proper. And I think to read it any more narrowly than that is inappropriate. So I think the divided Supreme Court made an error of fact under ADPA, an error of fact when they made that finding, because it makes no sense in our judgment. The bottom line, Your Honor, is that I think we think grounds three and four should go back for pursuit on their merits, and we would very much hope that the court will grant the certificate of appealability on ground one and 5E. Mr. Cox didn't get what he deserved. He didn't get a sentencing. He didn't get some other things, and we believe he's entitled to them. We'd like to come back and talk further about that. Thank you, Your Honor. Thank you, counsel. Thank you both very much. The case just argued will be submitted. The court will stand and recess for the day.
judges: Reinhardt, Siler, Hawkins